**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

SIMEON LEONARD YOUNGER,          *
#353438/1494972,
                                 *
            Plaintiff,
                                 *
      v.                                      Civil Action No. GLR-14-429
                                 *
CORRECTIONAL MEDICAL SERVICES,
et al.,                          *

            Defendants.          *

                              ***

**MEMORANDUM**

Pending before the Court is Defendants', Wexford Health Sources, Inc. ("Wexford")[1],

Contah Nimely, and Asresahegn Getechew, Motion to Dismiss or, in the Alternative, Motion for

Summary Judgment (ECF No. 12), and Defendants', Asresahegn Getechew, Contah Nimely, and

Corizon, Inc., Motion to Dismiss or, Alternatively, Motion for Summary Judgment (ECF No.

20);[2] Defendants' Motions to Seal (ECF Nos. 21, 25); and Plaintiff's, Simeon Leonard Younger,

---

[1] Defendant Wexford Health Sources, Inc. was incorrectly styled Wexford Health Services, Inc. in the Complaint. The clerk is directed to correct the docket to reflect Defendant Wexford's proper name.

[2] From July 1, 2005, through June 30, 2012, Wexford served solely as the utilization review management provider for the Department of Public Safety and Correctional Services ("DPSCS"). In that capacity, Wexford received and reviewed requests for referrals for inmate specialty care and treatment. During that same time period, the medical health care provider was Correctional Medical Services, later known as Corizon. After June 30, 2012, Wexford became both the medical care contractor and the utilization review provider. Counsels' representation of Defendants Contah Nimely and Asresahegn Getechew are separated by allegations related to care provided to Younger before July 1, 2012 (ECF No. 20) and after July 1, 2012 to present (ECF No. 12).

Motion for the Appointment of Counsel (ECF No. 26).[3]   No hearing is necessary.  See Local Rule 105.6 (D.Md. 2014).  For the reasons set forth below, Defendants' Motions to Dismiss or, in the Alternative, Motions for Summary Judgment will be granted and Defendants' Motions to Seal and Younger's Motion for the Appointment of Counsel will be denied.

## I. Background

Younger, a self-represented prisoner confined at Maryland Correctional Training Center ("MCTC"), alleges he experienced an injury playing football in November 2011, while he was incarcerated at the Maryland Correctional Institution at Jessup ("MCIJ").  He is a thirty-nine year old male with a medical history significant for osteoarthritis localized in the pelvis and thigh region and, most recently, a right quadriceps muscle tear.  Medical records, attached in support of Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Defs.' Mot. Dismiss or Summ. J. Ex. 1 ["Younger Prison Medical Records"], ECF No. 12-4), reveal the following treatment history concerning Younger's right quadriceps injury.

On April 23, 2012, while still incarcerated at MCIJ, Younger submitted a sick call request stating he had pulled a muscle jumping onto his bunk.  Younger Prison Medical Records at 1.  On May 21, 2012, P.A. Bogucki assessed Younger's right thigh as being tender to palpation with full range of motion.  Id.  On May 23, 2012, Younger was seen by Bogucki for a follow up and assessed as having a probable rupture of the right quadriceps muscle.  Id.  Bogucki submitted a consultation request for an orthopedic evaluation, but then changed it to request physical therapy.  See id. at 5-7.

---

[3] Also pending is Defendants' Second Motion for Extension of Time to Answer Complaint.  (ECF No. 19).  Defendants' Motion for Extension of Time will be granted nunc pro tunc.

On June 7, 2012, Younger was seen by a physical therapist and assessed as being positive for a torn quadriceps on his right leg. X-rays were taken and noted as negative except for osteoarthritis to the left hip. See id. at 8-9. A treatment plan was developed to include physical therapy to increase strength, ultrasound, and home exercise. Id.

On June 15, 2012, after transferring to MCTC, Younger submitted a sick call request complaining of pain in his right quadriceps and complaining that his medications were confiscated during the transfer. See id. at 10. On June 16, 2012, Younger was seen by RN Ford. See id. at 10-11. He was referred to chronic care with the first appointment scheduled within two weeks. Id.

On June 20, 2012, Younger was seen by P.A. McDonald for provider sick call. See id. at 12-14. He was assessed with depression in the mid-anterior of the quadriceps muscle more pronounced on the flexion of the thigh against resistance. Id. There was decreased flexion against resistance noted in the right leg. Id. Younger was referred for follow up x-rays on July 4, 2012. Id.

On October 5, 2012, Younger was seen at Bon Secours Hospital by Ashok Krishnaswamy, M.D., an orthopedist. See id. at 29-33. When Dr. Krishnaswamy had previously seen Younger in June 2012, he prescribed physical therapy and anti-inflammatory medicine. Id. This time, Dr. Krishnaswamy recommended an MRI of the right thigh and proscribed a muscle relaxant. Id. An MRI was performed on February 12, 2013. See id. at 43. The findings were consistent with a low grade muscle strain; however, no tear was identified. Id.

On April 12, 2013, Younger submitted a sick call request complaining of pain from his quadriceps and difficulty walking. See id. at 45. Younger was seen by RN Johnson on

April 16, 2013, and scheduled for a follow up with a provider to review the MRI results. <u>See</u> <u>id.</u> at 46-47. On April 27, 2013, Younger was seen by P.A. Griffith for follow up of the quadriceps condition. <u>See</u> <u>id.</u> at 48-50. He reported no change in his symptoms. <u>Id.</u> Younger's MRI results were discussed. <u>Id.</u> A knee brace was prescribed for the right knee, Motrin was prescribed, and provider follow up x-rays were ordered. <u>Id.</u>

On May 24, 2013, Younger was seen by P.A. Markowitz for right leg pain and low back pain. <u>See</u> <u>id.</u> at 56-57. Younger's Motrin was increased from 600mg to 800mg, and a physical therapy regimen was discussed. Younger was referred to Dr. Nimely and a consult was filed for an orthopedics evaluation. <u>See</u> <u>id.</u> at 58-59. On June 7, 2013, an x-ray was taken of Younger's right knee. <u>See</u> <u>id.</u> at 60. There was no evidence of an acute fracture, dislocation or subluxation. <u>Id.</u>

On June 14, 2013, Younger was seen by Dr. Manning for an onsite orthopedics evaluation. <u>See</u> <u>id.</u> at 61-62. Younger was assessed as having a right proximal quadriceps rectus femoris rupture, with persistent pain and weakness in the right thigh. <u>Id.</u> It was recommended that Younger be seen at University of Maryland Medical System ("UMMS") for evaluation and treatment. <u>Id.</u>

On June 20, 2013, Younger was seen by Dr. Nimely. <u>See</u> <u>id.</u> at 63-64. Younger reported difficulty walking, pins and needles sensation in the back of his knees, and pain radiating from his lower back to his posterior thighs and knees. <u>Id.</u> Younger was advised to continue quadriceps strengthening exercises. <u>Id.</u> A consult to UMMS orthopedics was filed. <u>See</u> <u>id.</u> at 65-66. On July 10, 2013, Younger was seen by Dr. Nimely at chronic care clinic. <u>See</u> <u>id.</u> at 67-68. He was advised that a consult request had not yet been presented in collegial. <u>Id.</u> Younger was scheduled to continue with chronic care clinic. <u>Id.</u>

On July 17, 2013, Younger was approved for evaluation at Bon Secours Hospital with Dr. Krishnaswamy.  See id. at 69.  On July 24, 2013, however, Younger refused to see Dr. Krishnaswamy because he had previously seen Dr. Krishnaswamy with no improvement.   See id. at 70-74.  Younger indicated that he was only interested in a surgical repair of the quadriceps at UMMS.  Id.  On August 7, 2013, Younger signed a release of responsibility and continued to refuse consult at Bon Secours Hospital by Dr. Krishnaswamy. See id. at 76-77.

On October 2, 2013, Younger was seen at chronic care clinic by P.A. Sampong.  See id. at 78-79.  It was noted that Younger was in no apparent distress.  Id.  On January 6, 2014, Younger was seen by Dr. Nimely at chronic care clinic.  See id. at 81-82.  Younger denied any ambulatory difficulties.  Id.  He was negative for back pain, myalgias, neck stiffness, and rheumatologic manifestations or weakness and was in no apparent distress.  Id. At that point, Dr. Nimely recommended that Younger's chronic care stop and he be seen for follow up as necessary.  To date, Younger continues to have access to medical care through the sick call process.

On February 12, 2014, Younger filed his Complaint pursuant to 42 U.S.C § 1983 (2012), alleging Defendants violated his civil rights by failing to provide surgery to repair his torn quadriceps muscle in his right thigh.  He seeks unspecified compensatory monetary damages, punitive damages, and injunctive relief to be seen at UMMS.  The pending Motions are now ripe for disposition.

## II. Discussion

**A.**     **Motions to Seal**

Defendants move to seal their Motions to Dismiss or for Summary Judgment, along with the attached exhibits, on the grounds that the documents contain sensitive medical information about Younger. Defendants argue redaction is not a viable alternative to sealing because redacting the documents would consume a significant amount of time and expense.[4]  Younger has not filed an opposition.

The public holds a First Amendment interest in the parties' summary judgment briefs. See Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) ("[A] more rigorous First Amendment standard should . . . apply to documents filed in connection with a summary judgment motion in a civil case.").   Under the First Amendment, sealing a record "must be necessitated by a compelling government interest and narrowly tailored to serve that interest."  Id. (citing Press-Enter. Co. v. Superior Court of Cal., Riverside Cnty., 464 U.S. 501, 510 (1984)).

Younger alleges deliberate indifference to his medical needs, which necessarily places his medical treatment and diagnosis concerning his right quadriceps at issue.   The court must, therefore, look to, and rely on, the medical records surrounding his treatment.   The factual information referenced in Defendants' Motions to Dismiss or for Summary Judgment is inextricably tied to the issues in this case.   Thus, Defendants have failed to show that Younger's interests heavily outweigh the public interest in access.   Accordingly, Defendants' Motions to Seal will be denied.

---

[4] The Court notes that information which, pursuant to Section K of the CM/ECF manual, requires redaction, including plaintiff's social security number and date of birth, have already been redacted from Younger's Prison Medical Records. (Defs.' Mot. Dismiss or Summ. J. Ex. 1, ECF No. 12-4).

Some of the documents attached as Exhibit A to Defendants Getechew, Nimely, and Corizon, Inc.'s Motion to Dismiss or, Alternatively, Motion for Summary Judgment (Defs.' Mot. Dismiss or Summ. J. Ex. A, ECF No. 20-3) contain information which requires redaction, including Younger's social security number and date of birth.  After reviewing the record, the Court does not agree that it would be impractical to redact this information.  Exhibit A to Defendants Getechew, Nimely, and Corizon, Inc.'s Motion to Dismiss or, Alternatively, Motion for Summary Judgment will, therefore, be stricken and Defendants shall refile the document within fourteen days of the date of the accompanying order with all appropriate redactions.

**B.      Motion for the Appointment of Counsel**

Pursuant to 28 U.S.C. § 1915(e)(1) (2012), a court has the discretionary power to appoint counsel only in exceptional circumstances.  See Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975); see also Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982).   In considering whether exceptional circumstances exist, the Court considers the complexity of the case and whether the pro se Plaintiff has the ability to present a colorable claim.  Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984) abrogated on other grounds by Mallard v. U.S. Dist. Court for S. Dist. of Iowa, 490 U.S. 296, 109 (1989); see also Branch, 686 F.2d at 266.  Here, the legal issue in the case is relatively uncomplicated and, upon careful consideration of the motions and previous filings by Younger, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. There are currently no exceptional circumstances that would warrant the appointment of an attorney to represent Younger under § 1915(e)(1).   Accordingly, Younger's Motion for the Appointment of Counsel will be denied.

C.      **Motions to Dismiss or, in the Alternative, for Summary Judgment**

1.      **Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556. "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

"When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (alteration in original) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted). Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

8

U.S. 574, 586-87 (1986).  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson</u>, 477 U.S. at 247-48 (alteration in original).

A "material fact" is one that might affect the outcome of a party's case.  <u>Id.</u> at 248; <u>see also</u> <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) (citing <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Hooven-Lewis</u>, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, Defendants' Motions will be construed as Motions for Summary Judgment.

**2.      Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976) (citing <u>Furman v. Georgia</u>, 408 U.S. 238, 392-93 (1972)).  The Amendment embodies broad standards of decency that "establish the government's obligation to provide medical care for those whom it is punishing by incarceration."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976).  To state a claim for denial of medical care under the Eighth Amendment, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amount to deliberate indifference to a serious medical need.  <u>See</u> <u>id.</u> at 106.

"Deliberate indifference" requires that the defendant prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." <u>Johnson v. Quinones</u>, 145 F.3d 164, 167 (4th Cir. 1998) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)) (internal quotation marks omitted). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985) (citing <u>Gittlemacker v. Prasse</u>, 428 F.2d 1, 6 (3d Cir. 1970)).  Questions of medical judgment are not subject to judicial review, and neither malpractice nor negligent diagnosis states a constitutional violation under the Eighth Amendment. <u>Gamble</u>, 429 U.S. at 105-06; <u>Sosebee v. Murphy</u>, 797 F.2d 179, 181 (4th Cir. 1986).

Here, the record evidences a circuitous, often confusing and frustrating, course of care for Younger's painful injury.  It appears from the record that simple matters such as forwarding appropriate records contributed to delays in diagnosing Younger's condition and the differences in medical opinion regarding the appropriate course of care resulted in redundant evaluations. While the Court sympathizes with Younger's frustration in attempting to resolve his painful condition, the undisputed facts demonstrate that he received substantial medical treatment and that the basis of his claim is a contention of malpractice rather than a contention of deliberate indifference under constitutional law principles.  <u>See</u> <u>Wright</u>, 766 F.2d at 849 ("Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983.").

Younger was evaluated by both on-site and off-site orthopedists.  He has had a number of x-rays and an MRI, which indicate a strain of the right quadricep.  He was treated conservatively with physical therapy, muscle relaxants, and pain medication.   Moreover, Defendants ameliorated any delays in Younger's treatment through the provision of pain medications and a knee brace, neither of which evidences a callous disregard to his ongoing pain.  While Younger prefers a surgical repair of his quadricep, he does not have a constitutional right to a preferred

course of medical treatment unless exceptional circumstances are alleged.  Wright, 766 F.2d at 849 (citing Gittlemacker, 428 F.2d at 6).  He alleges no exceptional circumstances which meet the standard of deliberate indifference to serious medical needs required for § 1983 liability. Accordingly, Defendants' Motions to Dismiss or, Alternatively, for Summary Judgment will be granted.

### III. Conclusion

For the reasons given above, Defendants' Motions to Dismiss or, Alternatively, Motions for Summary Judgment (ECF Nos. 12, 20) are GRANTED; and Defendants' Motions to Seal (ECF Nos. 21, 25) and Younger's Motion for the Appointment of Counsel (ECF No. 26) are DENIED.  A separate Order follows.

January 21, 2015

/s/

_____
George L. Russell, III
United States District Judge